350 So.2d 168 (1977)
STATE of Louisiana
v.
Rufus COBBS.
No. 59364.
Supreme Court of Louisiana.
September 19, 1977.
*170 Tilden Greenbaum, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Robert L. Simmons, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
The defendant Rufus Cobbs was charged with the crime of simple burglary, a violation of R.S. 14:62. Defendant waived trial by jury and the trial judge found him guilty as charged. The State then charged him as a multiple offender pursuant to R.S. 15:529.1 and he was adjudged to be a fourth offender. The trial judge sentenced him to twenty years imprisonment. Defendant assigns nine errors for reversal of his conviction and sentence.
Assignments of Error Nos. 5 and 7 were neither briefed nor argued and are deemed to be abandoned. State v. Matthews, 292 So.2d 226 (La.1974); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
The facts surrounding the commission of the crime follow. On June 28, 1976 a commercial laundry on Toulouse Street in New Orleans was burglarized. Stolen in the course of the burglary were a check writing machine and approximately two hundred fifty business checks. On the morning of June 30, 1976 an individual attempted to cash one of the stolen checks at a food store in New Orleans. The clerk at the store notified the police and they arrested the individual, charging him with forgery and possession of a stolen check. This person told the police that he had received the check from the defendant, Rufus Cobbs. He also informed the police that the check writing machine and numerous blank checks taken in the burglary were contained in a dresser drawer in the upper rear apartment facing North Galvez Street at 2112 St. Louis Street in New Orleans. That apartment was defendant's residence.
The officers obtained a search warrant which they executed at the defendant's apartment, seizing the stolen check writing machine and some of the stolen checks. Rufus Cobbs was also arrested at that time.

Assignments of Error Nos. 1 and 6
Prior to trial the defendant filed a motion to suppress the physical evidence seized during the search of his apartment. After a hearing the motion to suppress was denied. At trial the defendant again objected *171 to the introduction of the check writing machine and the checks. The objections were overruled and the evidence was admitted. The defendant assigns as error the denial of the motion to suppress and the introduction of the evidence at trial. The thrust of defendant's argument is that the property was illegally seized because the premises to be searched were not described with sufficient particularity in the warrant.
Both the United States and Louisiana Constitutions provide that no warrant shall issue unless based on probable cause, supported by oath or affirmation "and particularly describing the place to be searched. . ." United States Constitution Amendment IV; Louisiana Constitution Article 1 § 5. See also, C.Cr.P. 162.
The object of the description in a search warrant is to prevent the search of the wrong premises. If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient. United States v. Prout, 526 F.2d 380 (5th Cir. 1976); United States v. Darensbourg, 520 F.2d 985 (5th Cir. 1975); United States v. Melancon, 462 F.2d 82 (5th Cir. 1972). See also Wharton's Criminal Procedure, § 166 at 343-346 (12th Ed. 1974).
The description of the premises to be searched found in both the application for the warrant and the warrant itself was as follows: "2112 St. Louis Street Upper Rear Apartment facing N. Galvez Street." The application for the warrant also stated that 2112 St. Louis Street was a two story wood frame building with single room apartments and that the apartment to be searched did not have a number on it.
Following the arrest of the individual who attempted to cash one of the stolen checks, the officers drove by the apartment building and that individual pointed out the defendant's apartment and, in addition, drew a diagram indicating the location of the apartment. After dropping that person at Central Lockup, one of the arresting officers, Duane Johnson, returned to the apartment building to attempt to ascertain the correct municipal number of the building and the correct number of the apartment occupied by Rufus Cobbs. At the hearing on the motion to suppress, Officer Johnson testified that he proceeded to the top of the steps in the apartment building but couldn't see any number on the defendant's apartment door. He indicated that he came within approximately fifty feet of the apartment but did not want to approach any closer because he did not yet have a warrant and was afraid that the stolen property might disappear before he returned with the warrant. After this trip to the apartment building, the officers sought and obtained a search warrant. The defendant contends that the manner in which the warrant was executed demonstrates that the description of the premises to be searched was inadequate in that there was a reasonable probability that another premises might be searched.
The defendant testified as follows: when the officers came to 2112 St. Louis Street to execute the warrant, they first approached two men sitting outside of another apartment on the second floor, asked them for identification and then showed them a picture of the defendant. After leaving these men they requested the defendant to come to the door of his apartment and asked who he was. He gave them an alias. The police left and went to a number of other apartments on the second floor and searched at least two of them. Only after investigating these other apartments did the officers return to the defendant's apartment, arrest him and seize the stolen property. The defendant alleges that there are five apartments that could fit the description in the search warrant.
The defense also called Mr. W. E. Watts as a witness on the motion to suppress. He resided in an apartment at 2112 St. Louis Street and testified that the police entered several apartments on the second floor at the time that the warrant was executed. However, it is not clear from this witness' testimony whether he saw the officers enter the other apartments before or after *172 they executed the warrant and arrested the defendant in his apartment.
Officer Johnson testified that when he and his partner went to execute the warrant they went directly to the defendant's apartment. His testimony was as follows: at approximately 1:10 p. m. on June 30 the warrant was executed at the apartment of Rufus Cobbs at 2112 St. Louis Street. The doorway was open to the apartment, which was visible through the screen door. As they approached the apartment Officer Johnson observed Rufus Cobbs (whom he recognized from a photograph in his possession) lying on a bed near the doorway. He called to Rufus Cobbs, who opened the door and was arrested. The apartment was then searched.
When asked if they went to any other apartments after arresting the defendant and seizing the stolen property, Officer Johnson replied that they had. He testified that the person arrested for attempting to cash the stolen check told the police the names of two other suspects in the burglary and the police had information that these two suspects also lived at 2112 St. Louis Street. Officer Johnson further testified that while there were a number of apartments on the second floor of the building, only the defendant's was the upper rear apartment facing North Galvez Street. Finally, both Mr. Watts and the defendant answered affirmatively when asked if the defendant's apartment was at "2112 St. Louis Street, upper rear apartment, facing North Galvez."
In denying the motion to suppress, the trial judge gave the following reasons:
"Of course, there was hearsay evidence which is admissible. The informant, informer, told the officers where the checks were, the checkwriter was, where the defendant was. Based on that information they got a search warrant, and when he executed the search warrant, he went and found the man. He identified him and sure enough the checks and checkwriter were in the identical place that had been disclosed to the officers. So, I don't know how many apartments he went into. The officer's testimony is he went right there and arrested this man. I think there was testimony of Mr. Watts that he said he went somewhere else after. I think that's his testimony. But anyway I'm inclined to believe this officer's testimony. He's entitled to credibility, and for that reason the Motion to Suppress the property is denied."
When there is conflicting testimony as to a factual matter, the question of the credibility of the witnesses is within the sound discretion of the trier of fact. His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence. E. g., State v. McSpaddin, 341 So.2d 868 (La. 1977); State v. White, 329 So.2d 738 (1976); State v. Alexander, 328 So.2d 144 (La.1976). Here, the trial judge found the testimony of Officer Johnson to be credible. Coupled with the facts that the apartment had been pointed out to the officers previously, their possession of a diagram pointing out the apartment and the testimony of both the defendant and Mr. Watts that the defendant's apartment was the upper rear apartment at 2112 St. Louis Street facing North Galvez Street, we find that the search warrant did describe with sufficient particularity the place to be searched.
These assignments lack merit.

Assignments of Error Nos. 2, 3 and 4
In these assignments the defendant objects to the refusal of the trial judge to suppress the confession he gave to the police. His contention is that the confession should not have been admitted because it was not freely and voluntarily given and because it was the product of an unconstitutional search and seizure. Because we have found that the search and seizure were valid (see discussion of Assignments of Error Nos. 1 and 6 above), the second contention lacks merit.
Prior to trial, the defendant filed a motion to suppress the confession, and a contradictory hearing was held. The State offered the testimony of Officers Johnson and *173 Ducos who had executed the warrant and were present when the defendant gave his statement. Both officers testified to the following facts. At the time of the arrest the defendant was orally informed of his rights and indicated that he understood them. The defendant was then taken to an interview room at Central Lockup and was again read his rights from a "rights of arrestee" form. The defendant signed the form and Officer Johnson checked boxes marked "Yes" next to the following questions after reading them to the defendant: "Do you understand what I have just read to you?" and "Do you wish to waive your rights?" The defendant answered both of these questions affirmatively. The defendant then gave a statement in response to questions asked by Officer Johnson. The statement was given to the defendant to read after it was typed. The defendant then signed the statement. The officers testified that the defendant was not promised anything for signing nor was he beaten, coerced or abused in any way to make him sign the statement. The defendant was then booked, and the officers testified that at the time of the booking the defendant had no injuries or abrasions.
The defendant's testimony is in conflict with that of the police officers. He testified that the officers gave him his rights at Central Lockup and that he signed the "rights of arrestee" form. However, he claims that he was never asked any of the questions appearing on the statement nor did he give the police any information. The defendant testified that the officers typed up the questions and answers on their own and when he initially refused to sign the statement the officers began punching him and beating him in the stomach with a flashlight. He stated that the only reason he signed the statement was because he was being beaten. However, after he signed the statement and prior to being booked, the defendant was asked by the police whether he was injured in any way. The defendant admitted that he replied that he was not.
Before a written confession can be admitted into evidence, the State has the burden of proving that the statement was freely and voluntarily given and was not made as a result of fear, duress, intimidation or promises. R.S. 15:451; C.Cr.P. 703(C). The admissibility of a confession is a question for the trial judge, and his conclusions as to the credibility of witnesses testifying as to voluntariness will not be disturbed unless unsupported by the evidence. E. g., State v. Schamburge, 344 So.2d 997 (La.1977); State v. Ross, 343 So.2d 722 (La.1977); State v. Hollingsworth, 337 So.2d 461 (La. 1976).
The trial judge found the confession to have been freely and voluntarily given after the defendant heard and understood his rights. The record supports the trial judge's conclusion, except for the defendant's uncorroborated assertion that he was beaten into signing the confession. The trial judge resolved the conflicting testimony in favor of the police officers and there is no reason for this court to disturb that credibility determination.
These assignments lack merit.

Assignment of Error No. 8
After conviction, the State filed a bill of information charging the defendant as a multiple offender pursuant to R.S. 15:529.1. The defendant filed a motion to quash the bill urging that R.S. 15:529.1 is unconstitutional in that one charged as a multiple offender is subject to cruel, unusual and excessive punishment in violation of Article 1 § 20 of the Louisiana Constitution. The motion to quash was denied, the defendant was adjudged to be a fourth offender and was sentenced to a term of twenty years. The defendant assigns as error the refusal of the trial judge to quash the multiple bill.
This court has repeatedly held that an enhanced penalty imposed pursuant to R.S. 15:529.1 does not constitute cruel and unusual punishment. State v. Linkletter, 345 So.2d 452 (La.1977); State v. Williams, 326 So.2d 815 (La.1976).
This assignment lacks merit.

*174 Assignment of Error No. 9

In this assignment the defendant contends that the trial judge erred in finding the defendant guilty in that the only evidence of the crime of burglary was that the defendant was in possession of recently stolen property. The defendant relies on the case of State v. Searle, 339 So.2d 1194 (La.1976), which rejected the proposition that a defendant found in possession of property recently stolen in a burglary is presumed to have committed the burglary. The defendant's allegation appears to be that the State failed to offer evidence of every essential element of the crime of simple burglary.
During trial the defendant did not move for a judgment of acquittal, C.Cr.P. 778, nor did he file a motion for a new trial after conviction, C.Cr.P. 851. Only when the defendant has moved for a judgment of acquittal or for a new trial based on the argument that there is no evidence at all of some essential element of the crime charged is a question of law presented for this court to review. State v. Jamerson, 341 So.2d 1118 (La.1977); State v. Alexander, 339 So.2d 818 (La.1976). Therefore, this assignment is not properly before us for review.
In any event, in addition to the defendant's possession of the stolen property, the defendant's confession to the burglary was admitted into evidence. The State therefore did offer some evidence of every essential element of the crime. State v. Searle, supra, is inapposite.
This assignment lacks merit.
Accordingly, the conviction and sentence of the defendant are affirmed.