laWICKER, Judge.
The defendant, Glen R. Bertoniere (Berto-niere), was charged by bill of information with possession of marijuana over sixty pounds, a violation of La.R.S. 40:966(E). The charge was subsequently amended to possession of marijuana with intent to distribute. La.R.S. 40:966(A). Colleen Serpas (Serpas) was charged under the same amended bill of information as a codefendant but her bill of information was subsequently dismissed.
Bertoniere filed a motion to suppress the evidence which was denied by the trial court. Bertoniere applied for writs with this court seeking a stay and a review of the trial court’s ruling. Writs were denied.[1]
Bertoniere pled guilty as charged, reserving his right to appeal the trial court’s ruling on the motion to suppress under the provisions of State v. Crosby, 338 So.2d 584 (La.1976). The court sentenced defendant Ber-toniere to five years at hard labor, with credit for time served. The judge also stated that he would recommend defendant for the IMPACT Program. Defendant now appeals. We affirm.
| .«¡Defendant argues the search warrant application which gives the approximate size of three boxes, but no location other than “within the Parish of Jefferson,” is inadequate since it does not specify a “place” to be searched. However, the premises were not searched; only the specified boxes were searched.
Lieutenant Glenn Davis (Davis) of the Jefferson Parish Sheriffs Office testified at the hearing. His testimony revealed the following. On Friday, February 11, 1994, he was assigned to the Narcotics Unit and was stationed at the New Orleans International Airport. He received a telephone call there from Agent Wilson (Wilson) of the Houston Police Department. Wilson informed Davis that he had been contacted by Southwest Motor Freight Company in Houston regarding three suspicious looking packages brought into the company’s terminal that day. The packages were described to Wilson as three cardboard boxes addressed to a company called A-l Quality Delivery in Me-tairie, Louisiana. According to the shipping bill, the packages contained air filters. However, when one of these packages was torn open in an accident at the freight company, Southwest employees observed that the box did not contain air filters. Southwest Motor Freight requested that the Houston Police Department’s Narcotics Unit investigate the matter.
Wilson proceeded to the company’s terminal, where he viewed the boxes in question. He brought the police department’s drug detector dog into the terminal, and the dog gave a positive response to the three boxes. Wilson checked the Houston address and telephone number given by the sender of the packages, R & R Sales, and found that neither one was valid. Moreover, Wilson did not find evidence that such a company existed. The person who dropped off the packages for delivery was described as a Spanish male in his middle twenties.
Wilson advised Davis that he would allow the packages to be delivered as scheduled to the Southwest Motor Freight Terminal on Hessmer Avenue in Metairie. The packages were to arrive in Metairie on Monday, February 14. Based on the information conveyed to him by Wilson as well as Houston’s reputation as a source city for drugs, Davis set about obtaining search warrants for the three boxes.
|4On Saturday, February 11, 1994, Davis went several times to 813 Thirba Street[2] in Metairie, the address given for A-l Quality Delivery. It appeared to him to be a private residence, bearing no business signs. There were no cars parked on the premises and *204 there did not appear to be anyone in the house. On Sunday, February 13, 1994, Davis prepared a search warrant application for the packages. The packages were described in the application as:
“three boxes approximately 2 ft X 2 ft and 1 & 1/2 ft deep addressed from R & R Sales addressed to A-l Quality Delivery 813 Thirba St. Metairie, La. 70003' Phone # 504 737-9349.”
The warrant application also contained the information conveyed to Davis by Wilson.
Davis testified that the judge signed the search warrant on the evening of February 13, 1994, although the warrant itself was dated February 14. The search warrant[3] describes as follows the property to be searched:
“AFFIDAVIT(S) HAVING BEEN MADE BEFORE ME BY Sgt. Glenn Davis, of the JEFFERSON PARISH SHERIFF’S OFFICE, that he has a good reason to believe that on or in three boxes size approximately 2ft X 2 Ft. and 1 <& 1/2 ft deep, addressed from R & R Sales to A-l Quality Delivery 813 Thirba St. Metairie, La. 70003 phone # 504 737-9349 located within the Parish of Jefferson, State of Louisiana, there is now being concealed certain property, namely, marijuana, cocaine, heroin, U.S. Currency drug paraphernalia and or paperwork dealing with drugs [emphasis added.]”
At about 6:20 a.m. on February 14, 1994, Davis proceeded to the Southwest Motor Freight Company’s terminal on Hessmer Avenue. Sergeant Merida and Agent Labue went along to help execute the warrant. When they arrived at the terminal, the officers met with Mr. Lobdell (Lobdell), the terminal manager. Lobdell informed them that the truck carrying the three suspect packages had arrived. The boxes were removed from the truck and brought inside the freight office. Davis ran a drug detector dog, K-9 Ed, on the packages and the dog-displayed a positive response to the three boxes in question. The officers then served the warrant and opened the boxes. Each package contained large PVC pipes, each two feet in length and capped on each end with PVC caps. The officers opened one of these pipes and found it contained marijuana. The othez[1] two packages were also found to contain PVC pipes filled with marijuana. Upon Iscompleting their search, the officers resealed the boxes.
Lobdell told the officers that he had, in the past, received other shipments for A-l Quality Delivery. He referred to old invoices and found that the name of the contact person was Glen. The person’s last name began with a “B,” but was spelled differently on each invoice. Lobdell called the telephone number on the invoices and received an answering machine message which referred him to a pager number. Lobdell called the pager and received a response from a man who said he was with A-l. Lobdell informed the man that his packages had arrived and that he should pick them up.
At about 11:00 a.m. Bertoniere arrived at the terminal driving a pickup truck. He placed the three boxes in his truck and signed the shipping bill acknowledging receipt of the packages. After Bertoniere exited the freight terminal, Davis placed him under arrest and seized the three packages. Davis advised Bertoniere of his Miranda rights. Bertoniere gave the Thirba Street address as his place of residence. When the officers asked why there had been no one at that residence during the preceding weekend, Bertoniere stated that he was staying with his girlfriend, Serpas, who lived at 1700 David Drive.
The officers proceeded, with Bertoniere, to 813 Thirba Street. Bertoniere gave his consent to a search of the house, but later withdrew it. The officers then secured the residence while Davis obtained a search warrant for that address as well as the David Drive address. The Thirba Street warrant[4] was executed by Davis, Sgt. Merida, Sgt. Lewis and Sgt. Labue at about 3:00 p.m. on February 14, 1994. Among the items seized *205 at the residence were PVC pipe containing marijuana, clear plastic bags containing marijuana and an electronic scale.
At about 3:30 or 4:00 p.m. on February 14, the officers proceeded to 1700 David and executed the remaining warrant.[5] Among the items seized at that residence was a cardboard box identical to the three boxes seized at the freight terminal. The box contained marijuana.
Bertoniere claims the initial warrant, upon which the search of the three boxes was based, was defective in that it contained an insufficient description of the place to be searched. He | (¡further argues that, because the initial warrant was defective, any evidence seized pursuant to the two subsequent warrants was fruit of the poisonous tree and should therefore be suppressed.
La.Code Cr. Proe. art. 162 provides:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure.
Bertoniere asserts that the boxes themselves were the “things” to be seized and that the “place” to be searched was the site where the boxes were located. However, it in this case the things to be seized were the drugs and drug paraphernalia described in the search warrant. The “places” to be searched would then be the boxes themselves. The warrant and its supporting affidavit described the boxes and the suspected contents with great specificity.
In State v. Cobbs, 350 So.2d 168, 171 (La.1977), the Louisiana Supreme Court explained:
The object of the description in a search warrant is to prevent the search of the wrong premises. If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient.
Davis testified that when he prepared the warrant application on February 13, 1994, he believed the packages were en route from Houston to the Southwest Motor Freight Terminal in Metairie.[6] It is apparent that at the time the warrant was issued, Davis had more information regarding the whereabouts of the packages to be seized than was included in the affidavit. Like an automobile, however, a box is a moveable container, or “place”. The containers at issue here were in transit at the time the search warrant was obtained. Had the officer given more information in the affidavit as to where he thought the packages would be located at the time he executed the warrant, and the boxes were subsequently routed to a different location, the officer would have been faced with the question of whether he must then obtain a new warrant 17Containing the revised location. As it was, the description given was sufficient to prevent officers from searching the wrong boxes.
In State v. Joseph, 524 So.2d 273, 275 (La.App. 5th Cir.1988), this Court held:
In determining if the particularity requirement of Art. 162 has been satisfied, the affidavit and search warrant should be reviewed in a common sense and realistic manner, without technical requirements of elaborate specificity.
The particularity requirements of Article 162 were met in this case. It is sufficient that the warrant specifically described the packages themselves, as well as the contents of the packages. Furthermore, the boxes were located at the freight office and the officers were allowed on the premises by the freight manager to search for the boxes.
*206 We have found no errors patent upon review of the record.
Accordingly, for the reasons stated, the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. State v. Gen Bertoniere, et. ai, 95-211 (La.App. 5th Cir. 4/5/95), writ denied, 95-0901 (La.4/11/95); 653 So.2d551.

. It is noted that in the motion hearing transcript the street name is spelled "Thurber.” This spelling is apparently incorrect, as the spelling in the search warrant is "Thirba.”

. Copies of the affidavit and search warrant, State's Exhibit 1, in globo, were introduced as evidence at the motion hearing.

. The search warrant, with supporting documents, was introduced at the motion hearing as State's Exhibit 2 in globo.

. The David Drive search warrant and supporting documents were introduced as State’s Exhibit 3 in globo.

. Davis based this assumption on the conversation he had with Wilson on Friday, February 11 and not on his own personal knowledge of the packages’ whereabouts.