h KIRBY, Judge.
On January 4, 2000 the State filed a bill of information charging the four defendants, Johnny Jenkins, Chad Roig, Shenoa Lape, and Danny Brown, with first offense simple possession of marijuana. The trial started as to some of the defendants on February 8, 2000. After testimony was given, the court granted a directed verdict as to defendant Chad Roig and granted the motion to suppress evidence as to the defendants Johnny Jenkins and Danny Brown; the defendant Lape is apparently at large. The State objected to the trial court’s ruling on the motion to suppress, and the trial court granted ten days to seek writs. Although this writ was timely filed on February 18, 2000, the State failed to provide the transcript of the trial/motion hearing. That transcript has now been received.
The facts of the case are not in any real dispute. The evidence was seized pursuant to a search warrant and the existence of probable cause to issue the warrant is not at issue. What is at issue is the particularity of the description of the premises to be searched.
On August 17, 1999, officers of the New Orleans Police Department along with deputies from the St. Bernard Parish Sheriffs Office executed | ¿two search warrants. One was executed at 1327 Esplanade Street; the lead officer at that location was Detective William Marks. The other location was 1423 Esplanade Street, and all evidence at issue in this case was seized only from that location. Detective Marks was the affiant on both search warrant applications. He testified that he did a surveillance at 1423 Esplanade and that other officers also did surveillances there; all of the surveillances were documented in the affidavit in support of the search warrants. The detective admitted that there was an inaccuracy in the warrant application. He stated that the officers were watching a door which they believed gave entrance directly into the apartment at issue and about which a confidential informant had given information. However, when entry was made to execute the warrant at 1423 Esplanade, it was discovered that there was a hallway and that the door to the apartment at issue was off the hallway. Detective Marks further testified that the door into the apartment did have a “no smoking” sign on it and that this identifying sign had been mentioned by the confidential informant.
During further cross-examination, Detective Marks testified in detail about the door that he watched during the surveillance. From his vantage point, he could see down a long driveway. At the rear there was a “set of stairwells [that] looked like a gangplank to a ship, it [sic] was very steep and high up to the back, which went to a rear door.” It appeared to the officers that various persons were entering and exiting an apartment at the top of the second floor. Before applying for the search warrant, Detective Marks was able to confirm that there was only one door at the top of the stairwell. However, during the actual surveillance, the officer could not see anyone enter the door at the rear of the building; he could only see people “entering the back yard and going up the stairwell.” According to Detective Marks, 13 Agents Chad Clark and Erie Levis of the St. Bernard Sheriffs Office were the two officers who made entry into the apartment at 1423 Esplanade Avenue.
Sergeant Chad Clark testified that he took part in the arrest of the defendants. He entered the apartment at 1423 Esplanade. Inside, the defendants Danny Brown and Johnny Jenkins were sitting on the sofa in the living room. In front of them was a coffee table upon which was a clear plastic bag containing marijuana. Assisting in the execution of the search warrant at 1423 Esplanade were agents of the Drug Enforcement Administration, St. Bernard Sheriffs Office, and NOPD. Sergeant Clark further testified that, the day before the search warrant was executed, Detective Marks and Sergeant Levis conducted a surveillance.
*139 On cross-examination, Sergeant Clark stated that he did not personally have the search warrant with him when he executed the warrant at 1423 Esplanade Avenue; he stated that Detective Marks as case agent had it. Detective Marks came to the scene after entry had been made. Sergeant Clark confirmed that the door that they entered had a no smoking sign on it. He further stated that the apartment was around the rear of the building and up the stairs. The officers did not go on the first floor to look for any .other apartments that might have no smoking signs on them.
After Sergeant Clark testified, the State stipulated that Eric Levis would testify as Sergeant Clark did. However, the transcript does not indicate that the defense joined in this stipulation.
Following this testimony, the parties gave arguments with regard to the motion to suppress the evidence seized from 1423 Esplanade Avenue. The defense argued that the warrant did not correctly describe the location to be searched. In particular, the warrant indicated that the apartment was on Lthe first floor, not the second. Counsel argued that, because Sergeant Marks was not present during the initial execution of the warrant, thé discrepancy could not have been deemed harmless. During arguments, the State brought to the Court’s attention the fact that “the description of the two warrants were confused and the 1327 [Esplanade] description should have been on the 1423 [Esplanade] and the 1423 should have been for 1327.” The State argued that “the only difference is the going up the stairs and where the locations are in proximity to the building, not the description, probable cause, or any other thing relating to the warrants.” The trial court then granted the motion to suppress evidence.
The sole issue in this writ application is whether the trial court erred in suppressing the warrant for 1423 Esplanade Avenue on the grounds that the erroneous description of the apartment, to be searched invalidated the warrant. The State argues that any error in the description was in good faith and merely typographical in nature.[1] The State further suggests that, given the extensive surveillance of the apartment and the involvement of officers who conducted the surveillance in the search, the intended location was in fact the one searched.
A search warrant must particularly describe the place to be searched. U.S. Constitution, Amendment IV; Louisiana Constitution of 1974, Article I § 5; La.C.Cr.P. Article 162. The description in a search warrant application is sufficient if the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises. State v. Korman, 379 So.2d 1061 (La.1980); State v. Petta, 354 So.2d 563 (La.1978); State v. Cobbs, 350 So.2d 168 (La.1977). A discrepancy between the location described in the warrant and the location searched will generally not invalidate the search warrant. State v. Korman; State v. Ventry, 439 So.2d 1144 (La.App. 4 Cir.1983), writ denied 443 So.2d 589 (La.1983). However, if police officers knowingly search an entirely different premises than that described in the warrant, the evidence seized will be suppressed because the warrant did not particularly describe the place to be searched. State v. Manzella, 392 So.2d 403 (La.1980).
In State v. Smith, 397 So.2d 1326 (La.1981), a search warrant was issued for a residence located at 1821 Carondelet Street. The warrant application described the residence in greater detail, notably that there was picture window on the right side of the front door and a white column *140 bearing municipal number 1821 on a white column to the left of the front door. The warrant application also contained the information that no apartment number was available; the structure contained an upstairs apartment and a downstairs apartment. The police executed the search warrant and searched the apartment for which the front door was precisely where described in the warrant application. It was not learned until later that this apartment did have a separate municipal address of 1819 Carondelet Street. On appeal, the Supreme Court affirmed the trial court’s refusal to suppress the evidence. The court noted:
The object of the particularity requirement is to prevent the search of the wrong premises. As this Court said in State v. Cobbs, supra [350 So.2d 168 (La.1977) ] at 171:
“ * * * If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient. * * * ”
LHence, “a minor error in a portion of the description of the premises to be searched does not invalidate the search.” State v. Korman, 879 So.2d 1061, 1063 (La.1980)....
State v. Smith, 397 So.2d at 1328.
The court in Smith relied on State v. Hysell, 364 So.2d 1300 (La.1978), in which the search warrant failed to indicate which apartment at a two-apartment building was the object of the search. However, the affidavit in support of the warrant provided a detailed description, specifically that the apartment was on the east side above a beauty salon closest to the street, which the court found was sufficient to ensure that the police would not search the wrong apartment.
The Smith court distinguished State v. Manzella, 392 So.2d 403 (La.1980), in which the police officers, acting on information from a named informant, obtained a search warrant for 6176 Pontchartrain Boulevard. The application for the warrant described the premises to be searched as a “one-story, brick frame, double residence.” While executing the warrant, the officers rang the doorbell at the gate with the mailbox marked 6176. The woman who answered was the defendant’s sister and, when asked whether it was the residence of Blaise Manzella, she informed the officers that the defendant lived iri the other half of the house (6178 Pontchartrain Boulevard). The police then executed the search warrant at 6178 Pontchartrain Boulevard. On .review, the Court concluded that the apartment which was searched by the police was not particularly described in the warrant:
|7In the case before us, unlike Petta [State v. Petta, 354 So.2d 563 (La.1978)] and Alexander [State v. Alexander, 337 So.2d 1111 (La.1976)], we have a warrant for an actual address. Unlike the warrant in Korman, this warrant is not for the only complex apartment bearing the described number although naming the wrong building of the complex. Indeed, police were informed that defendant Manzella lived in the very apartment they sought to search and their information was erroneous. [Emphasis added.]
The apartment which was searched by the police was not “particularly described” in the warrant. In fact, another apartment, not defendant’s, was so particularly described. The description employed would not have prevented the search of the wrong premises; rather, the description would have facilitated the search of the wrong premises. That 6176 Pontchartrain was not searched was due to the lucky happenstance that defendant’s sister answered the bell at 6176 Pontchartrain Boulevard and informed police that defendant lived at 6178 rather than 6176.
Manzella, 392 So.2d at 405-06.
In State v. Johnson, 534 So.2d 1322 (La.App. 4th Cir.1988), cited by the State *141 in its writ application, a search warrant authorized the search of 70001 Bundy Road, Apartment E-15. The location actually searched was 7001 Bundy Road, Apartment E-15. This Court upheld the search, finding “there was very little, if any, possibility that the wrong premises would be searched. The typographical error of an additional ‘0’ in the address does not invalidate the warrant.” Johnson, at 1326. In Johnson, the police officer obtained and executed the warrant after personally observing the premises, setting up a surveillance, and verifying that the defendant resided there.
Likewise, in State v. Korman, 379 So.2d 1061 (La.1980), the search warrant inaccurately described the premises to be searched as “Georgetown Apartments, 6656 Harry Drive, Apartment 119”. While executing the warrant, the police officer realized that the correct municipal number was |s6636 Harry Drive; however, defendant’s apartment was the only one numbered 119 in the complex. The Court concluded that there was little possibility that an apartment not intended to be searched could have been searched through mistake and that the description in the search warrant sufficiently described the place to be searched.
In State v. Alonzo, 95-2483 (La.5/31/96), 675 So.2d 266, the warrant was issued for 654 N. Tonti, an apartment in a multi-unit dwelling. It was later learned that the correct municipal number was 660 N. Ton-ti. The affiant police officer explained that he has attempted to calculate the correct municipal number by counting apartment numbers on the building; also the informant had indicated that the municipal number was 654 N. Tonti Street. The trial court subsequently granted the motion to suppress evidence after viewing photographs and personally going to the site and looking at the backs of the apartments. This Court affirmed in State v. Alonzo, 95-1291 (La.App. 4 th Cir. 9/15/95), 661 So.2d 1043, but the Supreme Court reversed because the application for the search warrant contained an additional, detailed, description of the apartment to be searched. The court also noted that the officers searched the apartment they intended to search, that any police officer could have resolved the discrepancy by the use of the incorrect apartment number, and that the presence of the affiant officer at the time of the search “offered additional assurances that only the targeted premises and not any other apartment would be searched.” Alonzo, pp. 3-4, 675 So. at 267-68.
In State v. Diggs, 98-0964 (La.App. 4th Cir. 6/24/98), 715 So.2d 692, writ denied, 98-2647 (La.12/11/98), 730 So.2d 462, this Court relied on Alonzo and Johnson and found that a mere error in the municipal address number did not invalidate the warrant when it was apparent that the correct 19apartment had been searched, especially because the search warrant application contained a description of the apartment, the affiant was present during the search, and a surveillance of the targeted premises was conducted just prior to the execution of the warrant.
In State v. Bailey, 446 So.2d 352 (La. App. 4th Cir.1984), which the defense counsel distinguished in arguments to the trial court, the search warrant application erroneously stated that the apartment was “D” when it was in fact “C.” Nevertheless, the warrant was held valid because the application otherwise correctly described the apartment in detail and one of the officers involved in the execution of the warrant had aotually made an undercover narcotics purchase from the targeted apartment.
In -the -instant case, the municipal number was correctly noted to be 1423 Esplanade; it was the description of the premises that was wrong. This is in contrast to the many cases that have upheld warrants that have a correct description that could be followed to ensure that the correct premises were searched despite the erroneous municipal address. Here, the apartment was erroneously described *142 as being on the first floor when it was in fact on the second floor. Furthermore, both applications for search warrants indicate that the apartments to be searched were on the first floor; neither indicates a second floor apartment. However, one of the applications correctly noted that the apartment had a no smoking sign on the door.
More importantly, the argument made by defense counsel hinged largely on distinguishing the cases wherein the affiant officer was involved in the execution of the warrant, thus eliminating that the wrong apartment would be searched. Detective Marks, the affiant on both applications, did not participate in the execution of the warrant at 1423 Esplanade Avenue. However, both Detective Marks and Sergeant Clark testified that Agent Eric |inLevis participated in the execution of the warrant at issue. Although Agent Levis did not testify, the application in support of the search warrant states, in part:
Agent Levis then told Detective Marks that he conducted a surveillance of the two locations earlier on August 16, 1999 [the day before the search warrants were executed]. Agent Levis observed Danny Brown, a subject known to the agent, walk out of 1423 Esplanade, rear apartment, and walk to 1327 Esplanade and walk to the rear apartment of this address. A short time later, Danny Brown would exit this address and walk back to 1423 Esplanade rear apartment.
A short time later, Agent Levis observed a large amount of foot traffic coming and going from 1423 Esplanade Street, rear apartment. Agent Levis immediately recognized this traffic to be indicative of drug trafficking. Persons would arrive at the location, go inside and shortly there after [sic] exit the apartment and leave the area.
The application then recounts the observations of Agent Levis in great detail, including four different comings and goings from the apartment within a one hour time span. Later that day, according to the application, Detective Marks went to the Esplanade location and made additional observations of apartment narcotics traffic coming and going from 1423 Esplanade Avenue, as well as traffic from 1423 Esplanade to 1327 Esplanade and back, 1327 Esplanade Avenue having been the location identified by a confidential informant as the stash apartment.
Considering that the testimony establishes that Agent Levis was present and participated in the execution of the search warrant for 1423 Esplanade Avenue, that the search warrant application sets forth his detailed surveillance of the location, and that there is no indication that the affiant, Detective Marks, lied in the affidavit with regard to Agent Levis’ activity, we find that under Alonzo there was no reasonable possibility that the errors in the description of the apartment would have resulted in the search of the wrong location. Furthermore, in contrast to Manzel-la, the officers | n apparently searched the targeted location despite the erroneous description that it was a first floor and not a second floor apartment. Sergeant Clark testified that the officers never even went to the first floor. This fact supports a finding that Agent Levis directed the officers to the correct apartment from the outset.
Although a trial court’s ruling on a motion to suppress evidence is entitled to great deference, we find that the trial court’s ruling granting the motion to suppress in this case was erroneous in light of the jurisprudence. Therefore, this writ is granted and the trial court’s ruling is reversed. This case is remanded for further proceedings.
REVERSED AND REMANDED.
ARMSTRONG, J., dissents.
|!ARMSTRONG, J., dissenting.
I would deny the writ.

. The State notes that, although not brought out at the hearing, both of the applications for search warrants show the municipal number of the premises to be searched to be 1423; different descriptions of the structures are shown, but both reflect no apartment number, instead "Second rear apartment on first floor.”