| | | |
|---|---|---|
| **STATE OF LOUISIANA** | * | **NO. 2019-KA-0629** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **COLIN GILMARTIN** | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 543-244, SECTION "L"
Honorable Franz Zibilich, Judge
\* \* \* \* \* \*
**Judge Regina Bartholomew-Woods**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins, Judge Regina Bartholomew-Woods)


Leon Cannizzaro
DISTRICT ATTORNEY
Donna Andrieu
Chief of Appeals
Scott G. Vincent
Assistant District Attorney
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR APPELLEE/STATE OF LOUISIANA

Frank Gerald DeSalvo
Shannon Regeci Bourgeois
FRANK G. DESALVO, APLC
739 Baronne Street
New Orleans, LA 70113

      COUNSEL FOR APPELLANT/DEFENDANT


                              **AFFIRMED**
                          **JANUARY 15, 2020**

Defendant, Colin Gilmartin, seeks review of the trial court's judgment denying his motion to suppress evidence gathered during the execution of an April 18, 2018 search warrant. For the reasons that follow, we affirm the trial court's ruling on the motion to suppress the evidence. Accordingly, defendant's conviction and sentence are affirmed.

## BACKGROUND

On October 24, 2018, the State filed a bill of information charging Defendant with possession with intent to distribute marijuana greater than 2.5 pounds, a violation of La. R.S. 40:966(B)(2)(b); possession with intent to distribute cocaine greater than 28 grams, a violation of La. R.S. 40:967(B)(1)(b); possession with intent to distribute MDMA greater than 28 grams, a violation of La. R.S. 40:966(B)(1)(b); possession with intent to distribute methamphetamine less than 28 grams, a violation of La R.S. 40:967(B)(1)(a); possession with intent to distribute Clonazepam, a violation of La. R.S. 40:969(B)(2); possession with intent to distribute Carisoprodol, a violation of La. R.S. 40:1060.13; possession with intent to distribute Lisdexamfetamine less than 28 grams, a violation of La. R.S.

1

40:967(B)(1)(a); possession with intent to distribute amphetamine less than 28 grams, a violation of La. R.S. 40:967(B)(1)(a); possession with intent to distribute Buprenorphine, a violation of La. R.S. 40:968(B); and possession of drug paraphernalia, a violation of La. R.S. 40:1023.

On November 16, 2018, Defendant appeared for arraignment and entered a plea of not guilty as to each charge. On December 7, 2018, Defendant appeared for a discovery hearing at which time a hearing on the motions was set for December 11, 2018. At the December 11, 2018 hearing, Defendant made an oral motion to suppress the evidence due to a defective search warrant. On December 12, 2018, the State filed its memorandum in opposition to Defendant's motion to suppress the evidence. On January 3, 2019, Defendant filed his memorandum in support of his motion to suppress the evidence. On January 4, 2019, the trial court found probable cause, and denied Defendant's motion to suppress the evidence.

On January 30, 2019, Defendant filed a motion to reopen the suppression hearing, which was granted. On February 15, 2019, the trial court conducted a hearing on the motion to suppress the evidence and a preliminary examination hearing. Following testimony and argument, the trial court, once again, denied Defendant's motion to suppress the evidence. On March 18, 2019, Defendant withdrew his prior pleas of not guilty and entered pleas of guilty as charged; however, he reserved his right to appeal the trial court's denial of his motion to suppress the evidence as per *State v. Crosby*, 338 So.2d 584 (La. 1976). As to counts one through nine, the trial court sentenced Defendant to two years

2

incarceration at hard labor at the Department of Corrections. However, the sentences were suspended and Defendant was placed on two years active probation as to each count, with the sentences to run concurrently. As to count ten, Defendant was sentenced to 90 days at Orleans Parish Prison. This sentence was also suspended and Defendant was placed on one year active probation. Defendant was given credit for time served.

At the January 4, 2019 hearing, Defendant argued that a search warrant cannot be overly broad. The application for search warrant at issue reads as follows:

> **THAT**, a Search Warrant should be issued for the following described residence, curtilage, vehicles and any and all movables located on said curtilage:
> 2915 Upperline Street New Orleans, LA, 70115
> The multi-unit residence at 2915 Upperline Street, New Orleans, Louisiana, is described a *[sic]* two story building with light blue siding, light gray colored shingle roof. All of the residences have a second story and the entrances are on the ground floor. All of the entry ways *[sic]* face the South side of the property line. GILMARTIN's apartment entryway is located on the South side of the property line and is the last door down the right alleyway in the complex.

The search warrant issued in response to the application describes the property as follows:

> **AFFIDAVIT(S) HAVING BEEN MADE BEFORE ME BY Detective Andrew Roccaforte, of the New Orleans Police Department**, that they have good reason to believe that on or in a residence located at 2915 Upperline Street New Orleans, LA, 70115 located within the PARISH OF ORLEANS, STATE OF LOUISIANA, there is now being concealed certain property, namely….

Defendant resided in Unit D of the dwelling and contends that the search warrant issued did not identify his apartment unit; therefore, the search warrant

3

was too broad. The trial court, in denying Defendant's motion to suppress, found that there was no error or mistake in the description of the property to be searched.

At the February 15, 2019 hearing to reopen Defendant's motion to suppress, Defendant called two witnesses. Defendant's first witness, Marcus Lott, testified that he lived at 2915 Upperline, Unit A. Mr. Lott testified that the building is a four-plex and that his apartment was to the left of the building. On direct examination, Mr. Lott testified that on the day of Defendant's arrest he was home and someone knocked on his door, whom he was "pretty sure it was officers." He further testified that he did not answer the door or see who had knocked, but he could "definitely hear them outside talking to my neighbor." On cross-examination Mr. Lott testified that he paid his rent to Defendant and that Defendant "may own [the apartment]." Mr. Lott also testified that the officers did not enter his apartment unit.

Defendant's second witness, Troy Thom, testified that he also lived at 2915 Upperline, Unit B. On direct examination Mr. Thom testified that on the day of Defendant's arrest he was sitting outside on his steps when he saw "a whole bunch of cops coming in." Mr. Thom testified that he saw the officers knock on Unit A and "waited about three or four minutes and then proceeded down [to his] apartment." Mr. Thom testified that the officers asked if he was Defendant to which he responded "no." Mr. Thom continued that "they just kind of walked past me and went to Apartment C; knocked on that door . . . [a]nd proceeded on down

4

to Apartment D." On cross-examination, Mr. Thom testified that he also paid his rent to Defendant and that the officers did not enter his apartment unit.

The State called Detective Andrew Roccaforte ("Det. Roccaforte") as its sole witness. Det. Roccaforte testified that he was a New Orleans Police Officer assigned as a task force officer with the Drug Enforcement Administration. Det. Roccaforte stated that on April 19, 2018, he and his agents executed a search warrant on Defendant's apartment. On direct examination, Det. Roccaforte testified that on at least two occasions they conducted surveillance and, on one of those occasions, there may be "some video of the control pictures[1]." Det. Roccaforte further testified that on the dates of controlled purchases by his informant, he "had the eyeball of the door." As to whether he knew where Defendant's apartment unit was, in relation to the other units, Det. Roccaforte answered "absolutely," that they "knew exactly which door it was, the last door down the alley." Det. Roccaforte stated that there was "no doubt" as to which door was that of Defendant's unit. Det. Roccaforte refuted Mr. Thom's assertion that officers knocked on the doors of the other units; Det. Roccaforte testified that he neither saw officers do so, nor did his agents report doing so.

Upon denying the motion to suppress evidence, Defendant pled guilty as charged to each count in the bill of information. On May 3, 2019, Defendant filed this instant appeal.

---

[1] The officer alludes to "control pictures" which may be a mischaracterization, as it can be inferred logically, based on other testimony that he meant to say "purchases."

5

**ASSIGNMENT OF ERROR**

As his sole assignment of error, Defendant maintains that the trial court erred in denying his motion to suppress evidence gathered pursuant to what he characterizes as an overly broad search warrant. He argues that because the search warrant failed to limit the location to be searched to the single unit he occupies in a multi-unit building, the evidence seized should be excluded.

**STANDARD OF REVIEW**

Trial courts are vested with great discretion when ruling on a motion to suppress. The ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. *State v. Klein*, 2018-0022, p. 12 (La. App. 4 Cir. 8/22/18), 252 So. 3d 973, 981 (citing *State v. Long*, 2003-2592, p. 5 (La. 9/9/04), 884 So.2d 1176, 1179 (citing *State v. Horton*, 2001-2529 (La. 6/21/02), 820 So.2d 556, 561)). The district court's findings of fact on a motion to suppress are reviewed under a clearly erroneous standard, and its ultimate determination of Fourth Amendment reasonableness is reviewed *de novo*. *State v. Pham*, 2001-2199, p. 3 (La. App. 4 Cir. 1/22/03), 839 So.2d 214, 218 (citing *U.S. v. Green*, 111 F.3d 515 (7 Cir. 1997); *U.S. v. Seals*, 987 F.2d 1102 (5 Cir. 1993)). "A trial court's ruling on a motion to suppress the evidence is entitled to great weight because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony." *State v. Robinson*, 2009-1269, p. 5 (La. App. 4 Cir. 5/12/10), 38 So.3d 1138, 1141 (citing *State v. Mims*, 1998-2572, p. 3 (La. App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194).

**DISCUSSION**

A search warrant must state with particularity the place to be searched. U.S. Const. Amend. 4; La. Const. art. 1, § 5 (1974); La. C.Cr.P. art. 162. The particularity requirement in the Warrant Clause of the Fourth Amendment assures that "[b]y limiting the authorization to search to the specific areas and things for which there is probable cause to search ... the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S. Ct. 1013, 1016 (1987). In addition to conferring protections, similar to those provided by the Fourth Amendment, Article 1, § 5 of the Louisiana Constitution expands the scope of protection by affording Louisiana citizens standing to contest the legality of a search or seizure to "any person adversely affected." La. Const. Art. 1, § 5; *State v. Lewis*, 2008-0172, p. 3 (La. App. 4 Cir. 6/25/08), 988 So. 2d 789, 790-791; *State v. Gant*, 637 So. 2d 396, 397 (La. 1994). "A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained." La. C.Cr.P. art. 703(A). Therefore, "the defendant bears the burden of proof to show that evidence seized pursuant to a search warrant should be suppressed." *State v. Fournette*, 2008-0254, p. 25 (La. App. 4 Cir. 7/2/08), 989 So. 2d 199, 215 (citing State *v. Williams*, 2003-0302 (La. App. 4 Cir. 10/6/03) 859 So.2d 751); La. C.Cr.P. art. 703(D).

7

"The description contained in the search warrant is adequate if it is sufficiently detailed so as to allow the officers to locate the property with reasonable certainty and with reasonable probability that they will not search the wrong premises." *Klein*, 2018-0022, p. 13, 252 So. 3d at 981 (quoting State v. Korman, 379 So.2d 1061, 1063 (La. 1980)).

Defendant's argument that the failure to specify his apartment unit on the search warrant renders it insufficient to enable officers to locate with certainty the area to be searched is unpersuasive. The application for search warrant describes the property to be searched as follows:

> THAT, a Search Warrant should be issued for the following described residence, curtilage, vehicles and any and all movables located on said curtilage:
> 2915 Upperline Street New Orleans, LA, 70115
> The multi-unit residence at 2915 Upperline Street, New Orleans, Louisiana, is described a two story building with light blue siding, light gray colored shingle roof. All of the residences have a second story and the entrances are on the ground floor. All of the entry ways face the South side of the property line. GILMARTIN's apartment entryway is located on the South side of the property line and is the last door down the right alleyway in the complex.

In the search warrant, issued in response to the application, the property is described as follows:

> AFFIDAVIT(S) HAVING BEEN MADE BEFORE ME BY Detective Andrew Roccaforte, of the New Orleans Police Department, that they have good reason to believe that on or in a residence located at 2915 Upperline Street New Orleans, LA, 70115 located within the PARISH OF ORLEANS, STATE OF LOUISIANA, there is now being concealed certain property, namely….

The trial court found that the application for the search warrant limited the scope of the search to Defendant's apartment and accordingly, the search was sufficiently limited to a particular place. In *Klein*, 2018-0022, 252 So.3d 973, a case similar to the matter *sub judice*, the defendant argued, similarly, that the failure to specify his apartment number on the search warrant rendered it insufficient to enable the officers to locate the area to be searched with certainty or to eliminate the possibility the police would search the wrong premises. In *Klein*, the affidavit for the search warrant described the premises to be searched as follows:

> 2819 Carondelet Street, New Orleans, La., described as the middle first floor apartment of a raised two story wood frame structure with grey stucco and white trim. The apartment has a shared stairway on the south side that leads to the first floor. The numbers 2819 in white are affixed to a window above the front door facing Carondelet Street.

*Id*. p. 14, 252 So.3d at 982. This Court concluded there was no deficiency in the search warrant and found there was no error in the denial of the defendant's motion to suppress where the officer who conducted the surveillance of the targeted premises was present as the search was being conducted, and the police searched the intended location. *Id*. pp. 14-15, 252 So.3d at 982-983.

In *State v. Bailey*, (La. App. 4 Cir. 1/19/84), 446 So.2d 352 (La. App. 4 Cir. 1984), this Court reversed the trial court's judgment granting a motion to suppress and held the search warrant at issue valid because the application for the search warrant described the apartment in detail. Particularly, this Court pointed to the

9

fact that executing officers were also the officers who conducted the surveillance; supplied the affidavit to support the warrant; certainly knew the apartment to be searched; and after evaluating the facts and circumstances of the case was convinced that there was no possibility of the wrong apartment being searched. *Bailey*, 446 So.2d at 355; see also *State v. Hysell*, 364 So.2d 1300 (La. 1978) (officers specifically identified in the affidavit the place to be searched as the apartment on the east side [of the building], and it was these same officers who executed the warrant); *State v. Jenkins*, 2000-0425 (La. App. 4 Cir. 5/24/00), 764 So.2d 137 (considering the testimony establishes that affiant was present and participated in the execution of the search warrant for 1423 Esplanade Avenue, that the search warrant application sets forth his detailed surveillance of the location, and that there is no indication that the affiant lied in the affidavit, there was no reasonable possibility that the description of the apartment would have resulted in the search of the wrong location.)

In the matter *sub judice*, the trial court did not err in determining that the application for the search warrant of Defendant's apartment sufficiently described the location to be searched. In addition, Defendant's apartment was the object of surveillance and the officer who conducted the surveillance was present at the time the search warrant was executed. Due to the sufficiency of the description of the location to be searched presented in the application for search warrant and the presence of the officer who conducted the surveillance, the trial court did not err in

finding that the property to be searched was sufficiently described to avoid the possibility of the search of the wrong location.

**CONCLUSION**

Based on the aforementioned reasons, we find that Defendant's assignment of error lacks merit. Accordingly, we affirm the trial court's denial of Defendant's motion to suppress and we affirm defendant's conviction and sentence.

**AFFIRMED**