572 So.2d 269 (1990)
STATE of Louisiana
v.
Robert HAMILTON.
No. KA 90 0083.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
*271 William R. Campbell, Jr., New Orleans, John J. Williams Jr., Asst. Dist. Atty., Covington, for appellee.
James H. Looney, Office of Indigent Defender, Covington, for appellant.
Before SAVOIE, CRAIN and FOIL, JJ.
CRAIN, Judge.
Robert Hamilton was charged by indictment with three counts of drug racketeering, in violation of LSA-R.S. 15:1353 A, B and D. He pled not guilty. Defendant filed several pre-trial motions, including a motion to suppress evidence seized pursuant to three search warrants. The motion to suppress was denied. Subsequently, after a jury trial, defendant was found guilty as charged. He was sentenced to a term of imprisonment of fifty years at hard labor and to pay a fine of $500,000 on each count. The sentences are to run concurrently. He now appeals, urging three assignments of error, as follows:
1. The trial court improperly denied the motion to suppress evidence.
2. The trial court erred in admitting into evidence certain firearms and testimony related thereto, which evidence was beyond the scope of the State's opening statement.
3. The trial court imposed excessive sentences.

FACTS:
Robert L. Hamilton and eleven other persons were charged with drug racketeering in St. Tammany Parish between January, 1986, and March 11, 1988. The indictment charged Hamilton with three counts, to wit: (1) Count IKnowingly receiving proceeds derived, directly or indirectly, from a pattern of drug activity and using and investing such proceeds in the acquisition of title in real estate and in the establishment and operation of businesses, including the Corner Cafe and All Star Logging Company in Covington, Louisiana, a violation of LSA-R.S. 15:1353 A; (2) Count IIKnowingly acquiring or maintaining immovable property and enterprises through a pattern of drug racketeering activity, a violation of LSA-R.S. 15:1353 B; (3) Count IVConspiring to violate the drug racketeering statute, a violation of LSA-R.S. 15:1353 D.
In 1986, defendant leased a building in Covington, Louisiana, and opened the Corner Cafe. The cafe, an operating restaurant, also served as a base from which cocaine was sold. Defendant, Harold Roberts (AKA Ace), and, later, Hezikiah Barge (AKA Shank), shared the proceeds from the cocaine sales. According to Roberts, he and defendant planned to make $500,000 each and then leave the area. These drug transactions were conducted by junkies enlisted by Hamilton, Roberts or Barge as sellers. The sellers would approach occupants of vehicles or pedestrians around the Corner Cafe and offer to sell them cocaine. These men would then obtain money from the buyer; go to the cafe; get cocaine from Roberts, Barge or another person; and bring it back to the buyer. Sometimes, when defendant was at the cafe, he would give the men the cocaine. Other persons were hired on a salary basis to sell cocaine. These persons were actually given the cocaine. Once it was sold, they brought the money back to the cafe.
In 1988, after having made about $500,000, defendant started a logging business, All Star Logging Company, with money he received from cocaine sales. A building was leased for the business and equipment purchased with the drug money.
Although All Star Logging Company made money from cutting timber and from logging operations, that income did not equal the amount made through the cocaine sales. The company spent $287,000 more than it made between May 1987 and March 1988. The company also spent $185,000 before it had the first sale of timber or first income from contract hauling.
The money from the drug sales was kept in a safe at the restaurant. Barge, Roberts *272 and defendant had access to the safe. Whenever they removed cash, the date, amount taken and name of the person removing the sum would be recorded on a cash register receipt. Hamilton and Roberts also had bank accounts for the Corner Cafe and All Star Logging Company and a safety deposit box at a nearby bank. Also, jewelry was sometimes traded for cocaine. The jewelry either was taken to a jeweler to be melted down or kept at defendant's residence or in the safe.
Following a narcotics investigation and undercover surveillance, search warrants were obtained for the residence of Harold Roberts and the business locations of Corner Cafe and All Star Logging Company. The search of Roberts' house revealed some bags of cocaine in the attic. A scale for weighing cocaine and other drug paraphernalia also were found.
When the Corner Cafe was searched, over $27,000 in cash, in denominations of $5, $10, $20 and $100, was seized. Also, automobile titles (twelve of which were vehicles owned by either defendant or All Star Logging Company) and other business documents were seized.

ASSIGNMENT OF ERROR NUMBER ONE:
In assignment of error number one, defendant contends the trial court erred in denying his motion to suppress. He argues that the three search warrants issued were based upon affidavits which failed to show probable cause. The three search warrants authorized the search of Harold Roberts' residence,[1] the Corner Cafe, and the business location for All Star Logging Company.
A search warrant may issue only upon probable cause established to the satisfaction of a judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant. La. Const. Art. I § 5; La.C.Cr.P. art. 162. Probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Tilley, 525 So.2d 716, 718 (La.App. 1st Cir.1988); State v. Waterloo, 447 So.2d 561, 564 (La.App. 1st Cir. 1984).
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the Aguilar-Spinelli "two-pronged test"[2] in favor of a "totality of the circumstances" approach in reviewing search warrant affidavits. Under the new approach:
[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.
103 S.Ct. at 2332. (Citations omitted.)
The task of the reviewing court in evaluating a search warrant affidavit is simply to insure that the judge had a substantial basis for concluding that probable cause existed. A magistrate's determination of probable cause should be accorded *273 great deference by a reviewing court. State v. Rodriguez, 476 So.2d 503, 507 (La. App. 1st Cir.1985).
The affidavit supporting the search warrant for the home of Harold Roberts states that a confidential informant, who had previously given reliable information resulting in two arrests, revealed that Harold Roberts would leave the Corner Cafe and go to his residence to retrieve cocaine. He would return to the cafe in a silver and blue van to distribute the cocaine to purchasers. The affidavit further indicated the law enforcement authorities began a surveillance of the silver and blue van and saw Roberts' girlfriend, Kelli Serpas, drive the van to the residence of Roberts and Serpas. There, Roberts met Serpas and went into the residence. He reappeared and left the residence in the van. While driving in the direction of the cafe, Roberts was observed driving left of the center line and was stopped. He was observed throwing to the ground a small brown pouch, which was searched and found to contain two and a half ounces of cocaine. Upon a search of the vehicle, a quarter gram of cocaine was found. The affidavit further states that the informant had mentioned Roberts carried cocaine in a brown leather pouch. Moreover, it states that the finding of the cocaine, at the time of the stop and search of Roberts' vehicle, corroborated the specific information given by the informant that cocaine would be retrieved from the Roberts' residence.
Herein, this search warrant affidavit established that the informant was reliable, having previously provided information resulting in two drug arrests. It also established the credibility of his information that Roberts would go to his residence to retrieve cocaine. Roberts did in fact go to his residence, enter it and then leave in a silver and blue van as indicated by the confidential informant. Furthermore, when stopped, Roberts was found in possession of cocaine in a brown pouch as described by the informant. A common sense nontechnical reading of the affidavit provides a substantial basis for the allegation that drugs would be found at Roberts' residence. The fact that Harold Roberts did leave his residence in a van after going inside, and was found to have cocaine in a brown pouch when stopped, is a sufficient basis to conclude that contraband was stored in the house and that Roberts retrieved cocaine from that location. Specific independent corroboration of the accuracy of a report by an unidentified informant supports the credibility and reliability of the unidentified informant. State v. Rodriguez, 476 So.2d at 507. Considering the totality of the circumstances, we conclude the issuing magistrate had a reasonable basis for finding the informant's information reliable and for determining that there was probable cause to issue the search warrant for Roberts' residence.
As to the search of the Corner Cafe, we also find no error. The affidavit of probable cause for the search warrant for the Corner Cafe stated a confidential informant, who had given information in the past which resulted in two arrests, related to narcotics agents of the St. Tammany Parish Sheriff's Office specific information that he had obtained while at the Corner Cafe on numerous occasions. While at the Cafe for about four hours on March 9, 1988 (the affidavit was sworn out on March 11, 1988), the confidential informant saw drug transactions occur numerous times. Furthermore, on March 11, 1988, the confidential informant stated that oftentimes large sums of money, mostly from cocaine sales, were kept in the safe in the cafe, comingled with some proceeds of the business.
Herein, the credibility of the informant had been established by prior information given and arrests obtained as a result of that information. Furthermore, the affidavit states St. Tammany Parish Sheriff's Office agents witnessed drug sales outside the cafe. The sales corroborated the information given by the confidential informant as to drug sales conducted from the restaurant. The reliability of the information may be established by direct personal observation by the informant. State v. Tilley, 525 So.2d at 719. Herein, the confidential informant personally observed cocaine drug sales between Harold *274 Roberts and others outside and inside the Corner Cafe. After examining the basis for the information and the informant's reliability under the totality of the circumstances, we find them to be adequately established.
The affidavit of probable cause supporting the search warrant for All Star Logging Company related that expensive purchases of machinery were paid for in small denominations of cash. It further stated that a confidential informant gave information that defendant and Roberts would sell cocaine, divide the proceeds, and defendant would use his portion as capital in All Star Logging Company. The affidavit further refers to the search of Roberts' residence and the Corner Cafe. It states that deposit slips for an account in defendant's name were found in Roberts' residence and $27,000 cash, in small denominations, was found in the safe at the Corner Cafe. Furthermore, the affidavit states that defendant, after being advised of his rights during the search at the Cafe, stated the money in the safe could be traced from his business records and ledgers at All Star Logging Company.
The information that All Star Logging Company bought equipment in cash, in small denominations, combined with the results of the prior searches, supports a finding of probable cause. Cash was found in a safe at Corner Cafe, a business owned by defendant and managed by Roberts. Furthermore, defendant stated the cash in the cafe safe was linked to All Star Logging Company.
We agree that the affidavit supporting the warrant for All Star Logging Company does not give information regarding the reliability of the confidential informant who stated the funds in the business came from the sale of contraband. However, we do not find the omission to be fatal to the warrant. A common sense, nontechnical reading of the affidavit, which includes corroboration of the confidential informant's statements by the results of previous searches and defendant's own statement, supports the magistrate's conclusion of probable cause for this third search warrant.
Accordingly, since the affidavit in support of each search warrant sets forth facts demonstrating probable cause, the trial court properly denied defendant's motion to suppress.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO:
By means of this assignment of error, defendant contends the trial court erred in admitting into evidence firearms which had been seized during a search and in allowing testimony about these guns. He argues that this evidence was beyond the scope of the State's opening statement.
It is unnecessary for the State to detail every shred of evidence in an opening statement; it is sufficient for the State to give a general description of the evidence to be introduced. La.C.Cr.P. arts. 766 and 769; State v. Berain, 360 So.2d 822, 827 (La.1978). The opening statement's primary function is to set forth in general terms the nature of the charge and of the evidence sufficiently to enable the jury to follow the proceedings and to inform the accused of what acts on his part the State intends to prove. State v. Chapman, 410 So.2d 689, 698 (La.1981).
Herein, defendant was put on notice of the acts that the State intended to prove. Furthermore, the State's opening statement made reference to the search warrants which were obtained and the searches of Harold Robert's house, All Star Logging Company and the residence of defendant. The firearms introduced were seized from the residence of Harold Roberts and defendant, and from All Star Logging Company. Thus, the firearms and testimony about them were fairly within the scope of the opening statement.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE:
In this assignment, defendant contends he received excessive sentences. Defendant received a sentence of imprisonment for a term of fifty years at hard *275 labor, the maximum term of imprisonment, and a fine of $500,000, on each count. The sentences are to run concurrently.
LSA-R.S. 15:1354 provides that anyone who violates LSA-R.S. 15:1353 "shall be fined not more than one million dollars, or imprisoned at hard labor for not more than fifty years, or both."
The trial judge noted for the record that he considered all of the facts of the case in connection with the sentencing guidelines of the Louisiana Code of Criminal Procedure. He reviewed the facts of defendant's drug racketeering activities and the effect on the community. He also referred to defendant's lengthy criminal record.
The trial judge stated:
The Court has here for sentencing a fifty two [sic] year old man who has been convicted by a jury on three counts of drug racketeering. The maximum penalty on each count is a sentence of fifty years at hard labor, plus a million dollar fine. Now it was the defendant's intention to make a million dollars for the co-conspirator Roberts and himself through a conspiracy to sell cocaine in Covington, and this illicit endeavor and free enterprise is denounced by what we call our RICO Statute, and at the time of his arrest, it appeared at the trial from the facts that the defendant and Roberts made about $450,000.00 each in a period of six to nine months. The operations involved the use of junkies to sell the cocaine, and these addicts used the money they made to support their own habits. One junkie even overcame his habits, but continued to sell for Hamilton, which shows how callous this defendant was towards the operation. The sales of cocaine within the city limits became a twenty four hour a day business. The defendant even accepted jewelry for payments, in addition to money. This money was kept in a safe in the Corner Cafe, they kept it in the closets, they kept it in the attics, they kept it in the houses, they kept it in bank accounts and paper sacks, and it was laundered through this cafe and All Star Logging Company and All Star Construction, all of which were run by this defendant. This defendant even acquired title to seven vehicles and his corporation had title to another five, I believe.
Obviously, his conduct of selling cocaine caused much harm in the opinion of the Court to many people, and the defendant, this defendant exploited, exploited an economically deprived area of Covington. It appears to this Court and the Court finds that this defendant was provoked by greed for money, which indicates that if probation would be granted, there would be extremely undue risk that this defendant would continue in the same or similar activity, and it's thus, thus due to the defendant's criminal conduct was the result of circumstances that are very likely to recur, in this Court's opinion.
The Court further finds the defendant's character and attitude is such that without imprisonment he would commit another crime and that he would not respond affirmatively to probationary treatment. The defendant's prior delinquency record includes a total of some thirty four arrests going back as far as 1956. He has thirteen prior convictions, one of which, thirteen prior convictions, of which twelve are misdemeanors and one of which was a felony ...
A review of the individual excessiveness is considered in light of the criteria expressed by LSA-C.Cr.P. art. 894.1, the circumstances of the crime, and the trial court's stated reasons and factual basis for its sentencing decision. State v. Williams, 471 So.2d 255, 263 (La.App. 1st Cir.), writ denied, 475 So.2d 1102 (La. 1985). A trial judge is vested with discretion in the imposition of sentences within statutory limits, and a sentence will not be set aside as excessive absent a manifest abuse of discretion. A sentence should be considered excessive only if it is grossly out of proportion to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering. Maximum sentences are imposed for the most serious violations of the described offense and for the worst offender. State *276 v. Morris, 525 So.2d 1247, 1248 (La.App. 1st Cir.1988).
The record reflects the trial court ordered a presentence investigation report. Citing the seriousness of the crime and defendant's classification as a second felony offender, the report recommended that defendant be sentenced to the Louisiana Department of Corrections for the maximum period which could be imposed. Defense counsel had an opportunity to review the presentence investigation report prior to sentencing. He did not dispute any of the information contained in the presentence investigation report; however, he asked for mercy for defendant, due to the fact defendant had a young child.
Evidence adduced at trial supports the trial court's summary of facts of the case. The trial court determined that defendant's motive was greed; that the circumstances which led to defendant's involvement would recur; and that, if defendant were on probation, there would be an extreme undue risk that he would get involved in the same activity. The record more than amply justifies the sentences imposed by the trial court. Thus, we do not find defendant's sentences are excessive.
For the above reasons, defendant's sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Under Louisiana Constitution Article 1, § 5, as interpreted by the Louisiana Supreme Court, any person adversely affected by a search or seizure allegedly conducted in violation of Article I, § 5, has standing to raise that illegality. There is no equivalent under Louisiana constitutional law to the federal rule that one may not raise the violation of a third person's constitutional rights. State v. Smith, 546 So.2d 538, 540 (La.App. 1st Cir.), writ denied, 552 So.2d 393 (La.1989). Thus, defendant has standing to raise the claim that the search of Harold Roberts' home was illegal.
[2] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), had required search warrant affidavits to establish both veracity of the informant and the basis of the informant's knowledge to support a finding of probable cause.