820 So.2d 556 (2002)
STATE of Louisiana
v.
Ditra S. HORTON and Junius Eli.
No. 2001-KK-2529.
Supreme Court of Louisiana.
June 21, 2002.
*557 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Steffie K. Billings, Anne M. Termine, New Orleans, Counsel for Applicant.
Wayne T. Fontenelle, New Orleans, Anderson Council, Kenner, Counsel for Respondent.
JOHNSON, Justice.
We granted the State's writ application to determine whether the court of appeal erred in affirming the trial court's finding that New Orleans police officers lacked probable cause in searching defendants' residence and seizing property found therein. After carefully reviewing the record and relevant jurisprudence, we do not find the lower courts committed manifest error. Accordingly, we affirm their decisions.

FACTS AND PROCEDURAL HISTORY
The District Attorney for the Parish of Orleans ("the State") charged Junius Eli and Ditra S. Horton ("defendants") with possession of 200 to 400 grams of cocaine and possession of heroin, in violation of LA.REV.STAT. ANN. §§ 40:967(F)(2) and 40:966(C)(1) (West 1997). The preceding police investigation began on or about October *558 22, 2000, when New Orleans Police Detective Paul Noel stated that a confidential informant indicated that a black male, approximately 60-years of age and known as "Ghost" or "Eli," was utilizing 8915 Pritchard Place as a retail outlet for drug trafficking. Noel said the informant also indicated that the suspect used 3926 General Ogden Street to store the bulk of the drugs, although the suspect did not reside at that address. Noel further stated the informant indicated that his basis of knowledge was that he personally purchased cocaine from "Ghost" within the previous 48-hours.
Detective Noel also stated the informant indicated that an unknown black female, about 45-years old, who drove a grey Buick Century bearing Louisiana license plate "JAF 316" resided at 3926 General Ogden Street and that "Ghost" drove a black Lincoln Navigator bearing Louisiana license plate "V493224." Noel stated that the informant indicated that the unknown female assisted "Ghost" in his narcotics trafficking. Based on the forgoing, several detectives conducted extensive surveillance of defendants' residences.
On October 24, 2000 and during the surveillance, Detective Noel observed a black male (later identified as defendant Junius Eli), matching the description he said was given by the confidential informant, exit the Pritchard Place residence and enter a black Lincoln Navigator located outside the residence. Assisted by Detectives Andrew Roccaforte and Demond Lockhart, Noel followed Eli to the intersection to Tulane Avenue and Broad Street.
At approximately the same time, Detective Jeff Keating was conducting a surveillance of the General Ogden Street residence. He observed a black female (later identified as defendant Ditra S. Horton), matching the description Detective Noel said was given by the confidential informant, and carrying a brown paper bag, exit the residence and enter a Buick Century automobile. Detective Keating followed Harton to the corner of Tulane Avenue and Broad Street.
After Horton arrived at Tulane and Broad, Eli exited his vehicle and entered the Buick Century. Defendants then proceeded to three different locations where police officers observed what they allegedly believed to be three separate drug transactions. On the following day, October 25, 2000, Detective Noel presented a magistrate judge with an application for a search warrant for both the Pritchard Place and General Ogden Street residences.
In executing the warrant on the General Ogden Street residence, the officers found no obvious contraband. They did, however, find a locked toolbox. The detectives broke-off the toolbox's lock and seized: (1) a plastic bag containing 139.5 grams of cocaine; (2) a "Star Wars" bag containing another plastic bag with 251 grams of cocaine; (3) two glass tubes with cocaine residue; (4) a torn envelope with white powder; (5) a piece of aluminum foil containing heroin; (5) a triple beam scale; (6) a digital scale; (7) a box of sandwich bags; and (8) numerous used plastic bags. The detectives also seized $579.07 from Horton.
In executing warrant on the Pritchard Place residence, the officers did not find any contraband items. Nevertheless, an officer brought over the padlock from the toolbox at the General Ogden Street residence and seized a matching key from Eli's key chain. The detectives subsequently arrested and seized $432 from Eli.
Defendants pleaded not guilty to the State's drug possession charges and moved the Criminal District Court for the Parish of Orleans to suppress the seized contraband. *559 The district court granted defendants' motion and the State evidenced its intent to seek supervisory writs. The Fourth Circuit Court of Appeal denied the State's application. 01-K-1335 (La.App. 4 Cir. 8/10/01). The State filed supervisory writs with this Court. We granted the application. 01-KK-2529 (La.12/14/01), 803 So.2d 978.

LAW AND ANALYSIS
The State alleges the district court abused its discretion in granting the motion to suppress evidence because the magistrate judge found probable cause before issuing the search warrant. Moreover, the State argues the court of appeal committed manifest error in not reversing the district court's ruling.
In addressing probable cause and the magistrate's decision to issue the warrant, the State relies on State v. Hamilton, 572 So.2d 269 (La.App. 1 Cir.1990) which holds:
[t]he task of the reviewing court in evaluating a search warrant affidavit is simply to ensure that the judge had a substantial basis for concluding that probable cause existed. A magistrate's determination of probable cause should be accorded great deference by a reviewing court.
Id. at 272. The State argues the affidavit as presented in the case sub judice contained information about the veracity of the confidential informant, his basis of knowledge, and that the information was corroborated by defendants' actions, as witnessed by the affiant. The State, therefore, argues the magistrate found more than probable cause to issue the search warrant.
In evaluating the State's contention, we find it useful to begin our analysis by reviewing the relevant jurisprudence. In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned its previously-adopted strict, two-prong test in determining whether information given by a confidential informant is sufficient to establish probable cause. The two-prong test, developed in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), prohibited a finding of probable cause based on information given by a confidential informant unless both the "veracity," or "reliability," and the "basis of knowledge" of the information could be shown.
The Gates Court adopted a "totality-of-the-circumstances" test in evaluating a confidential informant's credibility. See Gates, 462 U.S. at 230-33, 103 S.Ct. 2317. Although other factors may be used in evaluating probable cause, veracity, reliability, or basis of knowledge, continue to be highly-relevant. See, e.g., State v. Lewis, 442 So.2d 1159, 1162 (La.App. 3 Cir. 1983), writ denied, 444 So.2d 1214 (La. 1984) (noting that although the Gates Court abandoned a rigid two-prong test in evaluating probable cause, veracity, reliability and the basis of knowledge remain very important); see also State v. Keno, 534 So.2d 160 (La.App. 3 Cir.1988) (reversing a district court's refusal to grant defendant's motion to suppress because of an absence of information giving credibility to a confidential informant).

Omissions from the Police Officer's Search Warrant Application
The district court was justly concerned about several omissions in Detective Noel's search warrant application and contradictory testimony given at the motion hearing. As the affiant, Detective Noel indicated that based on a reliable confidential informant's tip and his witnessing of corroborating events, defendants *560 were in possession of cocaine and trafficking drugs. See, generally, Application for Search Warrant. Detective Noel neglected, however, to inform the issuing magistrate that the confidential informant did not purchase drugs from defendants within the previous 48-hours and that the informant was paid $700 for information about defendants. See Transcript of Motion Hearing (3/29/01) at 21-22 (hereinafter "Transcript"). He also did not advise the magistrate that officers conducted an extensive surveillance of both residences and followed defendants to several locations, but never observed any suspicious behavior. See id. at 7, 24-25.
Furthermore, the affiant did not advise the magistrate that the officers searched one of the individuals who received a bag from Eli and the bag only contained ribbon. The affiant also did not advise the magistrate that they failed to stop or search the parties involved in two other alleged transactions.
During the motion hearing, defendants called Rocque Caston and Walter Taylor to testify. Mr. Caston indicated that he rolls ribbon, making umbrellas and fans, for various second-line clubs in New Orleans. He stated that on the day in question, defendant Eli met him at the intersection of Earhart and South Galvez to give him a plastic bag containing ribbon, along with $35 as payment for him rolling the ribbon. See Transcript at 43-46. Caston also testified that shortly after he met with Eli, police officers stopped and handcuffed him as they pulled-down his pants and searched for evidence of a drug transaction. See id. at 45. The officers only discovered ribbon, much like that Caston indicated he gave to Eli. Similarly, Mr. Taylor indicated he had known Eli for more than 20-years because of their association with a New Orleans Mardi Gras club. He also indicated that on the day in question defendant Eli delivered to him a bag containing ribbon for him to roll. See Transcript at 49-51.
A magistrate must be given enough information to make an independent judgment that probable cause exists to issue a warrant. See, e.g., State v. Manso, 449 So.2d 480, 482 (La.1984), cert. denied, Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The United States Supreme Court held that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." United States v. Leon, 468 U.S. 897, 915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (citations omitted). Moreover, this Court previously held: "[t]he process [of determining probable cause] simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system." State v. Rodrigue, 437 So.2d 830, 833 (La.1983) (citing Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965)) (emphasis added).
The previously described incidents show the affiant did not provide the issuing magistrate adequate information and did not act in good faith in securing the warrant. Accordingly, the district court concluded the police officers lacked reasonable suspicion about the brown paper bag. Moreover, the officers did not corroborate any information that would have led to a reasonable and objective conclusion that defendants were distributing drugs from their residences or vehicles. As such, the district court suppressed the improperly seized items.

*561 Did the District Court Abuse its Discretion in Granting Defendants' Motion?

The United States Supreme Court has held that evidence seized pursuant to a warrant for which there was no probable cause need not be suppressed if the officers who executed the warrant believed it was validly issued. See generally United States v. Leon, supra. The Leon Court, however, listed four situations where suppression is the appropriate remedy for a search pursuant to an invalid warrant: (1) the affiant misled the magistrate by including in the affidavit misleading statements which the affiant knew were false or would have known were false, except for reckless disregard for the truth;[1] (2) the magistrate abandoned his neutral and detached role;[2] (3) the affiant was so lacking of indicia of probable cause as to render official belief in its existence entirely unreasonable;[3] and (4) the warrant was deficient and could not be presumed valid. See id. at 914-15, 104 S.Ct. 3405.
In the case sub judice, the district court's judgment matches the first and third criterion. The affidavit indicated the confidential informant purchased cocaine from Eli within 48-hours of the time Detective Noel applied for the warrant. See Application for Search Warrant. However, testimony during the motion hearing shows the informant had not seen Eli in the two weeks prior to Eli's arrest. During cross-examination, Detective Noel made statements that were contradictory to those he made to the magistrate when applying for the warrant.
Q: What did you get from the CI that made you apply for a search warrant?
A: I was told that Junius Eli resides at 8915 Pritchard Place and also that he deals narcotics. But he stores the bulk of his narcotics at 3926 General Ogden Street. CI stated that Mr. Eli does not live there[,] that a female lives there but the female allows him to store the narcotics there.
THE COURT: (to the witness)
Did he at any time indicate that he saw any drugs in either one of those places at that particular time?
WITNESS:
He had indicated that he purchased from Mr. Eli in the past.
THE COURT: (to the witness)

No, not in the past. I'm talking about surrounding this. Let's say, let's go back[,] this is 10/24, let's go back to 10/10. Anytime between the tenth of October of 2000 and the 24th of October of 2000 that he had been in either of those residents [sic] and he had seen or made any purchases from any of those places?

WITNESS:
No, he did not.
Transcript at 40-41 (emphasis added). Furthermore, none of the extensive surveillance *562 indicated drug trafficking activity and a police search of one of the individuals who participated in an "exchange" the detectives witnessed only revealed ribbon.
During a Motion to Suppress hearing, the State has the burden of proving the admissibility of contraband articles seized without a warrant. See LA.CODE CRIM. PROC. ANN. art. 703(D) (West 2002). In the instant case, it cannot be said the warrant was obtained in good faith since the affiant knowingly made several misrepresentations to the issuing magistrate. Cf. United States v. Leon, supra. Therefore, contingent on the district court's findings, suppression of seized contraband is the appropriate remedy. See id. at 914, 104 S.Ct. 3405.
Even with support for a warrant application, "a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable cause determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect." Id. at 915, 104 S.Ct. 3405 (citations omitted). Furthermore, in reviewing the magistrate judge, the district court's ruling "on a motion to suppress ... is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony." State v. Mims, 98-2572 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-94 (citations omitted).
In the case sub judice, the district court's ruling is well-supported by the record. In granting defendants' motion to suppress, the court stated:
I'm impressed with the fact that no activity that even remotely suggestedI would be afraid if someone got a search warrant for my house and came in and found anything based upon what this was all about. They don't see any activity at any of these addresses that even remotely suggest[s]they don't see any dope. There is no controlled buy. There is nobody even suggesting that there is dope in any of these places and Mr. Council went a little furtherI'm glad he did present the ribbon thing ... with those particular stops and what have you. But there is nothing, absolutely nothing that suggest[s] that there was dope in either of these places.... And I find no probable cause for their arrest.

Transcript at 53 (emphasis added).
Furthermore, in keeping with the U.S. Supreme Court's standard in Gates, supra, the district court evaluated the "totality-of-the-circumstances," as it had the benefit of more information than did the magistrate judge. In reviewing the magistrate's decision to issue the warrant, the district court objectively found the police officers lacked probable cause. We, therefore, conclude the district court did not abuse its discretion in granting defendants' motion to suppress and that the court of appeal did not err in denying the State's writ application.

DECREE
For the foregoing reasons, we AFFIRM the Fourth Circuit Court of Appeal's denial of the State's supervisory writ application.
WEIMER, J., dissents for the reasons assigned by TRAYLOR, J.
TRAYLOR, J., dissents and assigns reasons.
VICTORY, J., dissents for the reasons assigned by Justice TRAYLOR.
*563 TRAYLOR, dissenting.
I dissent from the majority opinion because I would find probable cause existed for the issuance of a warrant to search the residences at issue in this case. I specifically take issue with three points made by the majority and the trial court. First, I strenuously disagree with the majority's statement that the officers "conducted an extensive surveillance of both residences and followed defendants to several locations, but never observed any suspicious behavior." Similarly, I disagree with the trial court's finding that there was "nothing, absolutely nothing that suggest[s] that there was dope in either of these places." Lastly, I disagree that the second line ribbon evidence somehow vitiated the police's probable cause and invalidated the search warrant.
The magistrate's principal task is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there was a fair probability that evidence of a crime would be found in both residences. See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The task of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Id. at 239, 103 S.Ct. 2317. As this court stated in Gibson v. State, 99-1730 (La.4/11/00), 758 So.2d 782:
The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence required at trial, and credibility determinations are seldom crucial in deciding whether available evidence supports a reasonable belief that the person to be arrested has committed a crime. Probable cause, as the very name implies, deals with probabilities. The probable cause standard recognizes that a degree of uncertainty may exist and that an officer need not have sufficient proof to convict but must have more than a mere suspicion. The facts need not eliminate all possible innocent explanations in order to support a finding of probable cause. (citations omitted)
In the present case, the corroborated tip for the reliable informant supported a reasonable, common sense inference made by the magistrate that the officers had a fair probability of finding evidence of drug trafficking at both residences. See United States v. Reddrick, 90 F.3d 1276, 1281 (7th Cir.1996) (a magistrate may infer that in the case of drug dealers evidence is likely to be found where dealers live); United States v. Robins, 978 F.2d 881, 892 (5th Cir.1992) (a residence is a convenient, commonly-used place for planning continuing criminal activities like drug trafficking); United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986) (a magistrate is "entitled to draw reasonable inferences," including that drug dealers have drugs "where the dealers live," and when traffickers consist of ringleader and assistants a sufficient "probability exists that drugs will be at the assistants' residence as well as the ringleader's.").
The facts accepted by the trial court in this matter reveal that the magistrate was informed that a confidential informant with a proven track record called Detective Noel with information regarding drug trafficking at both the Pritchard Place and General Ogden residences of the defendants herein. The informant stated that "Ghost" a/k/a defendant Eli used the General Ogden residence to "store the bulk of his cocaine," although he did not live at that address. The informant identified General Ogden as the residence of defendant Horton, who assisted Eli in his narcotics trafficking. The informant provided detailed vehicle information for both defendants and alleged that his factual basis for *564 this knowledge was from purchasing retail quantities of cocaine from "Ghost" for self indulgence within the forty-eight hours preceding the tip.
The warrant application set forth the above facts and related to the magistrate that, subsequent to the confidential tip, the police established a separate surveillance of both addresses and witnessed what would be reasonably determined by any officer of the law to be activity highly suggestive of drug trafficking. The surveillance teams witnessed Horton leave the General Ogden residence with a large paper bag, meet with Eli, and drive around the city to conduct three hand-to-hand transactions highly suggestive of narcotics transactions. The officers corroborated the informant's tip by tying Horton and Eli together in a series of apparent narcotics transactions. This showing alone, in my view, is sufficient to corroborate the reliable informant's tip to provide the requisite probable cause to search both Eli's Pritchard Place residence and Horton's General Ogden residence for contraband and fruits of the narcotic trafficking such as large amounts of cash or other evidence linking Eli and Horton in their illegal activity.
The trial judge did not find that the detective lied in the warrant application. Also, defendant Eli's involvement in a second-line organization nor Detective Noel's failure to reveal that the confidential informant did not see drugs or drug transactions occur at either residence would not defeat the probable cause basis of the search warrant. See State v. Tate, 407 So.2d 1133, 1137 (La.1981). My reasoning is that Eli allegedly received a paper bag from Coston, who was not alleged in any way to be engaged in Eli's drug trafficking, in a transaction which occurred completely separate and apart from the suspicious activity of Horton and Eli. Eli's seemingly innocent receipt of a brown bag from Coston does not necessarily vitiate the highly suggestive activities of Eli and Horton in delivering packages around the city.
Furthermore, the majority confuses the three hand-to-hand transactions wherein Eli gave a brown paper package in exchange for cash with the interaction between Coston and Eli, wherein Eli received ribbon from Coston. The evidence shows that Eli and Horton dropped off three separate packages at South Carrollton and Baudin Streets, at Martin Luther King Boulevard and South Robertson Street, and at Philip and Dryades Street. According to a witnesses for the defense, the only person stopped after a transaction was Mr. Coston. There is no evidence that the officers searched an individual who received a bag from Eli which contained ribbon. Only Mr. Caston stated that the police searched him and that he showed them to a dumpster which contained remnants of ribbon. Additionally, Detective Noel unequivocally stated that the officers attempted to stop an individual who received a bag from Eli but made no more attempts to stop the other individuals. The trial court did not find these statements to be incredible. Therefore, none of the suspicious exchanges wherein Eli and Horton delivered suspicious packages to various individuals around the city were known by the police to contain any innocent substance.
The trial court therefore erred by second-guessing the reasonable inferences drawn by the magistrate from the circumstances in the present case. Accordingly, I dissent and would reverse the lower courts' suppression of the evidence and remand this case to the trial court for further proceedings.
NOTES
[1] In Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Court noted that "it would be an unthinkable imposition upon [the magistrate's] authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment." Id. at 165, 98 S.Ct. 2674.
[2] A magistrate who lacks neutrality and acts as an "adjunct law enforcement officer" cannot provide valid authorization for an otherwise unconstitutional search. See Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326-327, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979).
[3] At a minimum, an affiant must "provide the magistrate with a substantial basis for determining the existence of probable cause." Illinois v. Gates, supra, at 239, 103 S.Ct. 2317.