NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KW 17-471

STATE OF LOUISIANA

VERSUS

JAMES G. BUCK

\*\*\*\*\*\*\*\*\*\*

ON WRIT OF CERTIORARI FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, DOCKET NO. 15-59048
HONORABLE LAURIE A. HULIN, JUDGE

\*\*\*\*\*\*\*\*\*\*

VAN H. KYZAR

JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John E. Conery, and Van H. Kyzar,
Judges.

WRIT DENIED.

Amanda Martin
15th Judicial Public Defender's Office
P.O. Box 3622
Lafayette, LA 70502
Telephone: (337)232-9345
Fascimile: (337)232-1169
COUNSEL FOR DEFENDANT/APPLICANT:
    James G. Buck

Roger Hamilton
Assistant District Attorney
15th Judicial District
Vermilion Parish Court
100 North State Street
Abbeville, LA 70510
Telephone: (337)232-5170
COUNSEL FOR RESPONDENT:
    State of Louisiana

**KYZAR, Judge**

The Defendant, James G. Buck, files this writ seeking a reversal of the trial court's denial of his motion to suppress evidence seized in connection with his underlying criminal charges. For the reasons herein, we deny Defendant's writ application.

## Background

On June 15, 2015, Defendant, James G. Buck, was charged with possession with intent to distribute CDS II (methamphetamine), in violation of La.R.S. 40:967(A)(1); possession of CDS IV (alprazolam), in violation of La.R.S. 40:969(C); possession of CDS II (amphetamine), in violation of La.R.S. 40:967(C); transactions involving proceeds from drug offenses, in violation of La.R.S. 40:1041(D); possession of firearms in the presence of a controlled dangerous substance, in violation of La.R.S. 14:95(E); and possession of drug paraphernalia, in violation of La.R.S. 40:1023. On June 22, 2016, Defendant filed a motion to suppress all evidence obtained as a result of a December 16, 2014 search of Defendant's residence.

Defendant claimed the warrant was issued without probable cause, arguing the application for the search warrant lacked particularity and there was no basis for concluding the individual, Ms. Elizabeth Pate, who provided information to the applicant, was reliable. Additionally, Defendant argued that the officer applying for the search warrant, Sergeant Jerath Bessard, "intentionally left off relevant and important information regarding Ms. Pate's unstable mental state and erratic behavior," thereby misleading the judge who signed the search warrant. The affidavit seeking the search warrant stated the following:

> On December 16, 2014[,] Sgt. Jerath Bessard and other agents with the Vermilion Parish Sheriffs' Office Narcotics Unit received information from Elizabeth Pate W/F stating that Craig Guillory

3

brought her to James Buck's residence located at 14001 Ash Street in Perry, LA. Ms. Pate continued to say that she and the males smoked Methamphetamine at the residence, she also stated that James Buck and Craig Guillory also cooks [sic] Methamphetamine at the residence, and are associated with the notorious Bandito Motorcycle Gang. Ms. Pate also stated that James Buck left a guy for dead last week in a field between Abbeville and Kaplan. VPSO located that male subject in a field on Cheneau Road.

Ms. Pate stated that James Buck took her over to Marlin [R]oad, the residence of his deceased father, and was trying to bring her into a field on a 4-wheeler and kill her. Ms. Pate said she jumped off the 4-wheeler and ran to a nearby house to call [the] Sheriff's Office.

A hearing on the motion to suppress took place on December 22, 2016, and January 3, 2017. Defendant and the State filed post-hearing memorandums on the issue, and, on March 31, 2017, the trial court denied the motion to suppress, stating:

The "direct personal observation of the informant," the affidavit's disclosure of the informant's name, and the coorborating [sic] information within the affidavit establish that the named informant was credible and her information was reliable. *Clay*, 408 So.2d 1295 (La. 1982). The testimony from Sgt. Bessard of his observations, conclusions, and personal knowledge of details of a separate narcotics investigation of the residence located [at] 14001 Ash Street; establishes that the defendant failed to show any genuine issue of his veracity or reckless disregard for the truth. Therefore, the affidavit contains sufficient probable cause and describes with particularity the place to be searched and the evidence thought to be found therein.

The following information was presented during the hearing on the motion to suppress. On December 16, 2014, Mr. Jeb Linscombe called law enforcement to have them remove a woman by the name of Elizabeth Pate from his home. Ms. Pate told Mr. Linscombe that she believed her acquaintance, Defendant James Buck, was trying to kill her. Deputy Travis Castille, a patrol deputy with the Vermilion Parish Sheriff's Office (VPSO), was one of the first officers on the scene. He testified that Ms. Pate was in an upstairs bedroom, was frantic and jumpy, and kept grabbing a pair of kitchen knives but would put them down before grabbing them again. Deputy Castille testified that although Ms. Pate did not

4

threaten anyone with the knives, she kept picking them up and seemed terrified, so he and Deputy Shawn Faulk handcuffed her and escorted her out of the house. Deputy Castille stated that although Ms. Pate was not cooperative, she was not charged with any crime. Furthermore, she was eventually taken to the hospital for medical attention as she admitted to being on methamphetamine.

Deputy Shawn Faulk, a field training officer with the VPSO, testified that he was the second officer on the scene with Deputy Castille. Deputy Faulk corroborated Deputy Castille's description of Ms. Pate's actions.

Lieutenant Dale Hargrave, a shift commander in the VPSO's patrol division, testified that he went out to Mr. Linscombe's residence and learned that there was a female in a panic. Lieutenant Hargrave described Ms. Pate as being intoxicated and paranoid, and she kept saying, in reference to Defendant, that "[h]e was going to kill me. He was about to kill me. He was going to kill me."

Sergeant Jerath Bessard, a narcotics detective with the VPSO, testified that he was called out due to Ms. Pate's allegations that Defendant had illegal narcotics in his house. He testified that Ms. Pate appeared to be under the influence of drugs and told him that she had been getting high with Defendant and Craig Guillory before going to a location across the street from Mr. Linscombe with Defendant, at which time Defendant tried taking her into the woods to kill her. Sergeant Bessard testified that he questioned Ms. Pate twice, and she told him she had been getting high on methamphetamine with Defendant and Craig Guillory that day and that there was a large quantity of methamphetamine still at Defendant's home. Sergeant Bessard testified that he included information in the affidavit for a search warrant that Ms. Pate had admitted to smoking methamphetamine with Defendant and Craig Guillory and that he obtained the address of Defendant's home based upon Ms. Pate's directions on how to reach the home. He also noted that Ms. Pate

5

was taken to the hospital following her interview because "[s]he was using drugs." Sergeant Bessard noted that execution of the search warrant resulted in the recovery of "[a]pproximately 6.8 grams of methamphetamine, three and a half, I think, Xanax pills, one suspected Adderall, $1,202 in US currency, and about fifteen guns," some of which were found near the methamphetamine.

Finally, Lieutenant Sammy Laporte, a homicide detective with the VPSO, testified that he spoke to Ms. Pate on the day in question and that she was hyper and excited, that she admitted to using drugs at Defendant's house, and that she was scared.

Defendant seeks review of the trial court's March 31, 2017 denial of his motion to suppress. He asserts two alleged assignments of error, as follows:

> 1. The trial court erred as a matter of law by misstating Defendant's initial burden in a *Franks* hearing and by refusing to reexamine the affidavit for probable cause in light of the affiant's omission of his sole informant's extreme intoxication, where the defendant proved the materiality of this omission by preponderance of the evidence.

> 2. The trial court abused its discretion by finding probable cause to support the search warrant within the four corners of the affidavit and considering the totality of the circumstances.

## Opinion

Defendant argues that the trial court held him to the incorrect burden of proof and that it abused its discretion in finding that the affidavit for the search warrant supported a finding of probable cause. As both of the assignments of error relate to the trial court's determination that the search warrant was issued upon sufficient probable cause, we will treat them simultaneously.

> It is well established that a search warrant may issue only upon an affidavit establishing probable cause to the satisfaction of a neutral magistrate. La.Const. art. 1, sec. 5 (1974); La.C.Cr.P. art. 162; *State v. Klar*, 400 So.2d 610 (La.1981). Probable cause exists when the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found

at the place to be searched. *State v. Johnson*, 408 So.2d 1280 (La.1982); *State v. Tranum*, 384 So.2d 367 (La.1980); *State v. Morgan*, 376 So.2d 99 (La.1979). Further, the facts establishing the existence of probable cause for the warrant must be contained within the four corners of the affidavit. *State v. Poree*, 406 So.2d 546, (La.1981); *State v. Daniel*, 373 So.2d 149 (La.1979); see also *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

*State v. Duncan*, 420 So.2d 1105, 1107-08 (La.1982).

Defendant argues that under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978), and its progeny, "given the proper showing, a Defendant can traverse the four corners of a search warrant affidavit and attack the reliability of the affiant's information." Additionally, that court held if a defendant proves perjury or reckless disregard for the truth by the affiant, false statements from the affidavit must be excluded and the affidavit reweighed for probable cause. *Id.* at 155-156. In *State v. Byrd*, 568 So.2d 554, 559 (La.1990), the supreme court noted that where "misrepresentations or omissions are inadvertent or negligent, the warrant will be retested for probable cause after supplying that which had been omitted or striking that which had been misrepresented."

Defendant argues that he proved Ms. Pate's extreme intoxication, an issue not contested by the State; therefore, the trial court should have re-evaluated the affidavit while considering the intoxication as part of the probable cause analysis. Additionally, Defendant argues the trial court should not have found probable cause because Defendant proved Ms. Pate was too intoxicated to be credible, but Sergeant Bessard chose "not to include" her intoxication in his affidavit, and he failed to independently corroborate Ms. Pate's allegations. Defendant claims the trial court erred in finding "the defendant failed to show any genuine issue of [Sergeant Bessard's] veracity or reckless disregard for the truth" and further that this is not the correct burden of proof he must meet at a hearing. The *Franks* court, however, specifically noted that "[a]llegations of negligence or innocent mistake

7

are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." Despite this language, the supreme court has stated that probable cause determinations are to be made based on the four corners of the application, "unless the defendant carries his burden of showing deliberate or negligent misrepresentations made by the affiant." *State v. Donald*, 13-18, p. 1 (La. 5/3/13), 115 So.3d 1138, 1138. Furthermore, in *State v. Watson*, 47,980, p. 1 (La.App. 2 Cir. 5/15/13), 135 So.3d 693, 696 n.1, *writ denied*, 13-1676 (La. 2/7/14), 131 So.3d 856, *and writ denied*, 13-1788 (La. 2/7/14), 131 So.3d 862, the second circuit specifically noted that *Franks* requires that "[a] defendant must proffer specific proof as to the falsehoods by the state, reflecting the affiant's deliberate or negligent misrepresentation." We find that the law is clear, the trial court correctly applied the standard, and that the trial court did not misstate Defendant's burden at the *Franks* hearing. The issue at a *Franks* hearing is the veracity of the information in the affidavit for the warrant, not the veracity of the informant.

Further, while Defendant argues the "significant material omission of Ms. Pate's extreme intoxication," stating that there was no mention in the affidavit of Ms. Pate's intoxication whatsoever, such a claim ignores the fact that the affidavit specifically noted "Ms. Pate continued to say that she and the males smoked [m]ethamphetamine at the residence." Although the affidavit does not mention Ms. Pate's "extreme intoxication," it specifically states that she had been smoking methamphetamine. We conclude that the trial court did not err in finding that Defendant did not prove a reckless, intentional, or negligent omission. While we acknowledge that the affidavit is not one-hundred percent clear on exactly when Ms. Pate, Defendant, and Mr. Guillory smoked methamphetamine, we also acknowledge the nature and purpose of the document.

8

> Affidavits, by their nature, are brief, and some factual details must be omitted. Unless the omission is willful and calculated to conceal information that would indicate that there is not probable cause or would indicate that the source of other factual information in the affidavit is tainted, the omission will not change an otherwise good warrant into a bad one. (citations omitted)

*State v. Kreitz*, 560 So.2d 510, 512-13 (La.App. 1 Cir.), *writ denied*, 565 So.2d 940 (La.1990).

While Defendant argues and believes the affidavit was not explicit enough, urging that the trial court should have reweighed the affidavit for probable cause with the inclusion of the information that Ms. Pate was heavily intoxicated when she spoke to Sergeant Bessard, such re-evaluation ultimately leads to the same conclusion. The affidavit is clear that Ms. Pate is at least an occasional user of methamphetamine, and knowledge that she was high at the time she spoke to law enforcement would not necessarily have led to a finding of no probable cause. Furthermore, within the four corners of the affidavit, it can, at the least, be inferred that Ms. Pate had used methamphetamines with Defendant and was subsequently taken to the other location, where she became fearful for her life, escaped, and then called authorities. Her excited state, expressing fearfulness to the homeowner Mr. Linscombe and the officers on their arrival, as well as her admissions against her own interests that she had been using methamphetamines with Defendant support the conclusion that the events occurred within the time span immediately prior to Mr. Linscombe's call to authorities. Additionally, specific information provided by Ms. Pate to Sergeant Bessard was corroborated by him, including the location of the body of a potential homicide victim by VPSO and the location of Defendant's home as generally described by her. Accordingly, we find that the trial court was correct in its denial of Defendant's motion to suppress.

9

We also find that the good faith exception, recognized in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984), is applicable here and further supports denial of the motion to suppress. Defendant recognizes the good faith exception is a problem that he must overcome, stating in brief that "the good faith exception does operate here to preclude suppression of the fruits of this seizure." He argues, however, that the good faith exception should not apply because it was unreasonable for Sergeant Bessard to believe in the validity of the search warrant. We disagree. In *Leon*, the Supreme Court found that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918. The Court further noted that:

> This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." *Id.*, 428 U.S., at 498, 96 S.Ct., at 3054 (BURGER, C.J., concurring). Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id.* at 920-21 (footnotes omitted).

Further, as noted by the supreme court:

> The *Leon* Court, however, listed four situations where suppression is the appropriate remedy for a search pursuant to an invalid warrant: (1) the affiant misled the magistrate by including in the affidavit misleading statements which the affiant knew were false or would have known were false, except for reckless disregard for the truth; (2) the magistrate abandoned his neutral and detached role; (3) the affiant was so lacking of indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant was deficient and could not be presumed valid.

10

*State v. Horton,* 01-2529, p. 7 (La. 6/21/02), 820 So.2d 556, 561 (footnotes omitted).

In the instant case, the only scenario which might arguably apply is number three. However, we conclude that the information included in the affidavit is more than sufficient to render official belief in the warrant reasonable. In *State v. Wood,* 457 So.2d 206, 208-09 (La.App. 2 Cir. 1984), the second circuit found an affidavit sufficient to justify an objectively reasonable belief in its validity despite noting:

> the affidavit does not state that the confidential informants themselves saw the listed items in the premises to be searched. . . .
>
> . . . the affidavit does not state when the items were seen or when the information was given by the informants to the affiant. . . .
>
> . . . the statement that the informants have been "found to be very reliable in past investigations" falls short of providing specific facts sufficient to determine the reliability of the informant.

The court in *Wood* noted that the magistrate should have never issued the search warrant; however, the good faith exception applied, and the court affirmed the trial court's denial of the motion to suppress. In the case *sub judice,* while it is true that the affidavit does not specify exactly when Ms. Pate saw methamphetamine at Defendant's home or when she actually used the drug with Defendant, there is some information supporting the reliability of the informant, and the information contained in the affidavit as a whole is sufficient for a law enforcement officer to believe in the validity of the warrant issued pursuant to it. Defendant argues once more that because Sergeant Bessard withheld Ms. Pate's condition "from the issuing judge by omitting any reference to Ms. Pate's demeanor or state of mind at the time she gave him her information" Bessard lacked good faith to believe in the validity of the warrant. However, there was no showing of bad faith on the part of Sergeant Bessard. There was no error in the

11

trial court's finding that "[D]efendant failed to show any genuine issue of [Sergeant Bessard's] veracity." In the absence of a showing of bad faith, the case does not rise to the level of an affidavit "so lacking of indicia of probable cause as to render official belief in its existence entirely unreasonable." *Horton*, 820 So.2d at 561. We thus conclude that the good faith exception to the exclusionary rule established in *Leon* additionally applies here. As a result, the trial court did not err in denying Defendant's motion. Defendant's writ application is denied.

**WRIT DENIED.**